# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 7386 | **DATE** | 1/27/2003 |
| **CASE TITLE** | MILLER vs. GENERAL MOTORS CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter memorandum opinion and order regarding amended motion for class certification.**

(11) ■ [For further detail see attached to original minute order]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 31 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 69 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | DW courtroom deputy's initials | 03 JAN 30 PM 4:00 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

CHERISE MILLER, *et al.*, individually and on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

GENERAL MOTORS CORPORATION,

    Defendant.

No. 98 C 7386
No. 98 C 2851
Judge James B. Zagel

DOCKETED
JAN 3 1 2003

## MEMORANDUM OPINION AND ORDER

This is a purported class action suit against General Motors Corporation brought by three named representatives, each of whom owns a GM car on which the paint peeled away revealing ugly patches of exposed undercoat. Plaintiffs claim that a latent defect in the original painting process caused the peeling and that GM knew and said nothing. The warranty period for each plaintiff's car has expired, and GM has refused to pay for new paint. Plaintiffs bring their claims on behalf of two classes of owners of GM vehicles exhibiting delamination: (1) a consumer fraud class consisting of persons from 44 states and the District of Columbia and commercial entities from 31 states; and (2) a common law fraud by omission class from across the nation. Plaintiffs have moved to certify these classes.

A class will only be certified if the action meets the four prerequisites of Federal Rule of Civil Procedure 23(a) and one of the sections of Rule 23(b). *Calkins v. Fidelity Bond and Mortg. Co.*, No. 94C5971, 1998 WL 719569, at *1-2 (N.D. Ill. Oct. 8, 1998). Under Rule 23(a), the plaintiffs must clear four hurdles, which are (in shorthand) numerosity, commonality, typicality

and fairness/adequacy. Under Rule 23(b)(3), a class should be certified where (1) common questions predominate over individual questions, and (2) a class action is superior to other adjudicative methods.

Among other arguments, defendants argue that the proposed classes do not meet the requirements of Rule 23(b)(3) because no uniform set of legal rules governs the nationwide classes, and thus common questions of law do not predominate over individual questions. In the face of this charge, Rule 23(b)(3) demands that I comprehensively review and analyze the alleged conflicts among the states' consumer fraud statutes and fraudulent omission laws before certifying any class. *See, e.g., Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996); *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 525 (N.D. Ill. 1998). Therefore, I ordered plaintiffs to provide a comprehensive review of the applicable variations in state law and to explain how the variations affect the Rule 23(b)(3) predominance inquiry. After considering their submissions and defendant's response, I am unconvinced that the law regarding consumer fraud by omission and common law fraud by omission in each of the various jurisdictions included within the proposed classes will not create commonality or manageability problems.

As a general rule, uniform law is essential to class certification, and I will only certify a class in which the law is uniform. Just recently the Seventh Circuit noted that "[n]o class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements of Fed.R.Civ.P. 23(a), (b)(3)." *In re Bridgestone/Firestone Inc.*, 288 F.3d 1012 (7th Cir. 2002), *cert. den.*, 71 USLW 3283 (Jan. 13, 2003). Such differences have led the Seventh Circuit to hold that warranty, fraud, or products-

liability suits may not proceed as nationwide classes.[1] Even nuances among different jurisdictions' laws can bar a nationwide class. *See In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995).

Defendants are correct that the law among the various states included within the proposed classes is not uniform.[2] "Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable." *In re Bridgestone/Firestone Inc.*, 288 F.3d at 1018. No court has held that the fifty states' consumer fraud statutes, or common laws of fraudulent omission, are so similar that a single forum state's law could be applied to a multi-state class.[3] In fact, virtually every court to face the issue has steadfastly refused to certify nationwide class actions due to variance in states' laws.[4] But the lack of uniformity here is not

---

[1] *E.g., Isaacs v. Sprint Corp.*, 261 F.3d 679 (7th Cir. 2001); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir.), *cert den.*, 122 S.Ct. 348 (2001); *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995); *see also In re Mexico Money Transfer Litig.*, 267 F.3d 743, 746-47 (7th Cir. 2001), *cert. den., Garcia v. Western Union Financial Services, Inc.*, 122 S.Ct. 1607 (2002).

[2] Some of the issues on which differences exist include: differences in whether omissions can form the basis for a statutory fraud claim; differences in standards of liability for both statutory and common law omission claims; differences in standards for a duty to disclose; differences in standards for showing knowledge of the facts allegedly omitted; differences in standards for intent; differences in standards of reliance; differences in standing requirements; differences in notice requirements; differences in statutes of limitations; and different standards for compensatory and punitive damages.

[3] *E.g., In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 222 (E.D. La. 1998); *Winn v. Mitsubishi Motors America, Inc.*, No. 96-2206, slip op. at 3-4 (C.D. Ill. April 16, 1997).

[4] *E.g., Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998); *Castano v. American Tobacco Co.*, 84 F.3d 734, 743-44 (5th Cir. 1996); *Andrews v. American Tel. & Tel. Co.*, 95 F.3d 1014, 1025 (11th Cir. 1996); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 458 (D.N.J. 1998); *Fischer v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365 (N.D. Ill. 1998); *In re Ford Motor Co. Bronco II Litig.*, 177 F.R.D. 360, 368 (E.D. La.,1997); *In re Masonite Corp. Hardboard Siding Products Liability Litig.*, 170 F.R.D. 417 (E.D. La. 1997); *Ford Motor Co.*

fatal to plaintiffs' motion for class certification. There may be certifiable classes within the reaches of the plaintiffs' proposed classes, but prior to certifying them, I need to individually examine each respective legal issue on which differences are alleged to exist and conduct thorough state-by-state analyses in order to produce classes each subject to one respectively uniform set of laws.

I disagree with plaintiffs' general application of the theory that Illinois law may be applied to non-Illinois claims simply because the applicable jurisdictions' laws are not "clearly established." According to plaintiffs, there are over 190 separate instances in which another jurisdiction's law is not "clearly established" thus allowing application of the (presumptively) clearly established Illinois law. This approach runs directly contrary to established constitutional precedent as set forth in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), as well as established federal law requiring a federal court to predict how the state's highest court would resolve an unsettled issue. The problem with plaintiffs' theory is that Illinois Restatement (Second)'s "most significant relationship" analysis necessarily implicates the laws of all fifty-one jurisdictions. It has long been held that, in determining each state's substantive law, a federal court sitting in diversity must "resolve issues in the same manner as would the highest court of the state that provides the applicable law." *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 416-17 (7th Cir. 1997). If a state's highest court has not spoken to the issue, the federal court must "use [its] best judgment to determine how that court would construe its own law." *Id.* at 417. In doing so, the court may consider several sources: (1) decisions of the state's

---

*Ignition Switch Products Liability*, 174 F.R.D. 332, 340 (D.N.J. 1997); *Endo v. Albertine*, No. 88C1815, 1995 WL 170030 (N.D. Ill. April 7, 1995); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653 (C.D. Cal. 1996).

4

lower appellate courts, (2) decisions of the state's trial courts, (3) decisions from other states, (4) federal court decisions, and (5) restatements, treatises and other "appropriate" authorities. *See, e.g., id.* at 417-18 (considering lower appellate authorities, federal decisions, and decisions from other states); *Wells v. Liddy*, 186 F.3d 505, 528 (4th Cir. 1999) (court can consider "canons of construction, restatements of law, treatises, recent pronouncements of general rules or policies by the state's highest courts, well considered dicta, and the state's trial court decisions"); *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 399 (2d Cir. 2001) ("Other data include relevant case law from other jurisdictions on the same or analogous issues, scholarly writing in the field, and any other resources available to the state's highest court."). Further, where the issue presents a controlling question of state law, the court may certify the issue to the state's highest court, where certification is available. *See Stephan*, 129 F.3d at 418.

Contrary to plaintiffs' suggestion, a federal court faced with uncertain or undeveloped state substantive law may not throw up its hands and simply apply the forum's substantive law with the hope that the two would not conflict. Rather, just to determine whether a conflict (or "false conflict") exists, the court must undertake an analysis of the jurisdiction's substantive decisions – as well as the decisions of other federal and state courts and any other appropriate authority – to predict how the jurisdiction's highest court would rule. That is precisely what the U.S. Supreme Court held in *Phillips Petroleum Co. v. Shutts*. In that case, the Kansas Supreme Court applied Kansas law to the claims of all class members without determining whether the potentially applicable laws of ten other states conflicted with Kansas law. 472 U.S. at 802. The U.S. Supreme Court remanded the case so that "putative conflicts" among the jurisdictions' laws

5

could "be addressed by the Supreme Court of Kansas on remand under the correct constitutional standard." *Id.* at 816. The court noted, for example, that:

> there is no recorded Oklahoma decision dealing with interest liability for suspended royalties: whether Oklahoma is likely to impose liability would require a survey of Oklahoma oil and gas law.

*Id.* at 816-17. Thus, far from allowing application of the forum state's law where there was no "established law" from another potentially applicable jurisdiction – as plaintiffs propose here – the *Shutts* court remanded the case to the Kansas Supreme Court for the specific purpose of predicting the law of the other states and then determining whether the law of those states conflicted with that of Kansas. *Id.* at 816-22.

In sum, I do not accept plaintiffs' invitation to apply Illinois law to the claims of putative class members from other states simply because, in plaintiffs' view, the laws of those other states are not "clearly established." Rather, I must undergo a process by which I will on a state-by-state basis delineate what each jurisdiction's law is or predict what it will be on each issue on which difference of law is alleged. I may only apply Illinois law when, after engaging in this process, a state's actual or predicted position is unascertainable. I must caution the parties about the extensive and intensive nature of the process upon which we are about to embark. It will be long and arduous. Therefore, I advise plaintiffs to seriously consider withdrawing their motion for class certification prior to beginning this endeavor.

Having said that, I will now begin this arduous process of mapping out classes that can be certified. The first obstacle to certification is differing state law regarding reliance. In some states, reliance on GM's alleged omissions may be presumed and is thus not an element of a claim for common law or statutory fraud. Other states, however, require individual findings of

reliance as an element of a claim for each class member from that state. In states requiring such reliance, individual showings will be necessary and thus will preclude class certification. Because such individual issues of reliance predominate, courts have repeatedly recognized that fraud claims are not appropriate for class certification.[5] Likewise, I will not grant class certification for persons from states in which individual showings of reliance are an element of the claim. A class will be certified only in "no reliance" states, states in which reliance is not an element or in which reliance can be presumed.

Plaintiffs cannot avoid the conflict of state laws regarding reliance through any blanket "presumption" of reliance. First, courts that have addressed the issue have refused to extend the presumption of reliance embodied in the federal securities "fraud-on-the-market" theory to state law fraud claims. Indeed, the very argument plaintiffs make here was rejected in *In re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 221 (E.D. La. 1998). Second, plaintiffs' assertion that Illinois allows courts to presume reliance in a claim for common law fraud may be incorrect. Even granting that *Steinberg v. Chicago Medical School*, 371 N.E.2d 634 (Ill. 1977), stands for the proposition which plaintiffs claim that it does, subsequent federal decisions interpreting Illinois law have rejected a presumption of reliance. *See In re Information Resources, Inc. Sec. Litig.*, No. 89C3772, 1994 WL 124890, at *3 (N.D. Ill. April 11, 1994); *Morse v. Abbott Laboratories*, 756 F. Supp. 1108, 1112 (N.D. Ill. 1991); *Good v. Zenith Electronics Corp.*, 751 F. Supp. 1320, 1323 (N.D. Ill. 1990). Additionally, the Illinois Supreme

---

[5] *E.g., Rhone-Polenc Rorer*, 51 F.3d 1293 (7th Cir. 1995); *Ford Vehicle Paint Litig.*, 182 F.R.D. at 220-21, 224; *Castano*, 84 F.3d at 740; *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 453 (E.D. Pa. 2000); *Chin*, 182 F.R.D. at 456; *Carpenter v. BMW of North America, Inc.*, No. CIV. A. 99-CV-214, 1999 WL 415390 (E.D. Pa.. June 21, 1999).

7

Court may have more recently clarified that reliance is an element of both common law fraud, *see Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996), and consumer fraud, *see Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151 (Ill. 2002). At the least, in light of the argument on this issue I must conduct thorough analysis as to what Illinois law requires in terms of reliance. Finally, even if Illinois allows such a presumption of reliance, I nonetheless refuse to apply that presumption to other states at this time on the basis of plaintiffs' loosely defined no "clearly established" law rationale for the reasons discussed above. Application of Illinois state law on reliance to any other state claim will only occur after thorough analysis as to what that state's actual or predicted position on reliance is.

In sum, I will consider certifying only classes from "no reliance" jurisdictions, and the only way to figure out which jurisdictions are included is by engaging in the detailed state-by-state analysis described above. I leave to one side the question of whether certification would be appropriate at all if the state in which the court sits is a reliance state. After all state-by-state determinations have been made and I delineate which states fall within the "no reliance" category in which I will certify a class, I will then proceed to the next legal issue on which it is alleged that state laws differ and proceed in a similar manner, addressing the issue state by state. I will proceed in this manner – issue by issue, state by state – until I arrive at classes that fit within the criteria of 23(b)(3) and can then be certified.

For the aforementioned reasons, plaintiffs' Amended Motion for Class Certification is entered and continued. Should plaintiffs wish to proceed with the motion, they are instructed to contact my minute clerk to set up the additional briefing discussed above.

ENTER:

James B. Zagel
United States District Judge

DATE: 27 Jan 2003